KENNARD, J., Concurring.
I join in affirming defendant’s judgment of death. I write separately because, although I agree with the majority that defendant’s challenge to the grand jury selection process lacks merit, I reach that conclusion by using a somewhat different analysis.
In June 1993, the Grand Jury of Los Angeles County returned an indictment charging defendant with, among other things, the murder of Joseph Finzel. Thereafter, defendant moved in superior court to dismiss the indictment, alleging that the process used to select the grand jurors discriminated against women and Hispanics in violation of the equal protection guarantee of the federal Constitution’s Fourteenth Amendment. The trial court held a hearing at which both the prosecution and defendant submitted evidence, after which the court denied the motion. On this appeal, defendant argues that the trial court erred in so ruling.
Although the prosecutor argued in the trial court that defendant’s equal protection claim is controlled by the United States Supreme Court’s decision in Duren v. Missouri (1979) 439 U.S. 357 [58 L.Ed.2d 579, 99 S.Ct. 664], in this court the Attorney General has conceded that the controlling authority is the high court decision in Castaneda v. Partida (1977) 430 U.S. 482 [51 L.Ed.2d 498, 97 S.Ct. 1272] (Castaneda). I agree that Castaneda controls, as does the majority.
Under Castaneda, a defendant raising an equal protection claim regarding the selection of grand jurors must make a prima facie case of purposeful discrimination. “The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. [Citation.] Next, the degree of underrepresentation *766 must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time. [Citations.] ... [A] selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing. [Citations.] Once the defendant has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the State to rebut that case.” (Castaneda, supra, 430 U.S. 482, 494-495.)
Here, the majority says it is “not entirely certain of the elements of a prima facie equal protection violation.” (Maj. opn., ante, at p. 735.) Because of this uncertainty, the majority declines to determine whether defendant made a prima facie case of purposeful discrimination as to either women or Hispanics. (Id. at p. 737.) I do not share the majority’s uncertainty about the elements of a prima facie case. As the quotation in the previous paragraph shows, the prima facie case has two elements—the existence of a distinct, identifiable class, and a statistical showing of substantial underrepresentation over a significant period of time. (Castaneda, supra, 430 U.S. 482, 494-495.) Proof of these two elements raises a presumption of discriminatory purpose, thereby shifting the burden of proof to the prosecution. Evidence that the selection procedure is “susceptible of abuse” or “not racially neutral,” although not required as an additional element of the prima facie case, “supports the presumption of discrimination raised by the statistical showing.” (Id. at p. 494.)
Both women and Hispanics form distinct, identifiable classes for purposes of equal protection analysis, so it is undisputed that defendant here established the first element of the prima facie case. (See maj. opn., ante, at p. 736 [stating that “the first prong of Castaneda's ‘prima facie’ test is met”].) Regarding the second element, the statistical showing of underrepresentation, the majority does not decide whether defendant presented sufficient evidence. (Id. at p. 737.) I conclude that defendant’s statistical showing was sufficient as to Hispanics but not as to women.
Regarding women, the record shows that from 1986 to 1994, 41.2 percent of the grand jury nominees in Los Angeles County were women, while women constituted 50.6 percent of the population. This translates to an absolute disparity of 9.4 percent, which is insufficient to raise an inference of purposeful discrimination. (See Swain v. Alabama (1965) 380 U.S. 202, 208-209 [13 L.Ed.2d 759, 85 S.Ct. 824] [“We cannot say that purposeful discrimination based on race alone is satisfactorily proved by showing that an identifiable group in a community is underrepresented by as much as 10%.”]; see also People v. Ramos (1997) 15 Cal.4th 1133, 1156 [64 Cal.Rptr.2d 892, 938 P.2d 950] [citing numerous decisions finding similar absolute disparities *767 insufficient].) For this reason, I conclude that defendant failed to establish a prima facie case of purposeful discrimination against women in the selection of grand jurors in Los Angeles County during the relevant time period from 1986 to 1994.
Regarding Hispanics, the record shows that from 1986 to 1992, only 6.6 percent of the grand jury nominees in Los Angeles County were Hispanics, while voting-age Hispanic citizens who spoke at least some English constituted 19.1 to 19.4 percent of the population. These numbers reveal an absolute disparity around 12.7 percent and a comparative disparity around 60 percent. Considering both absolute and comparative disparities (see Berghuis v. Smith (2010) 559 U.S. __, __ [176 L.Ed.2d 249, 130 S.Ct. 1382, 1393] [recognizing that both tests are “imperfect”]; People v. Burgener (2003) 29 Cal.4th 833, 860 [129 Cal.Rptr.2d 747, 62 P.3d 1] [considering both absolute and comparative disparities]), I conclude that defendant made a sufficient statistical showing to raise a presumption of discriminatory purpose.
This presumption was supported by evidence that, when the grand jurors who returned the indictment against defendant were selected, Los Angeles County used a grand juror selection system that was “susceptible of abuse” (Castaneda, supra, 430 U.S. 482, 494) in the sense that the judges who nominated the grand jurors were given complete discretion and were not required to explain or justify their nominating decisions. Persons wanting to serve on the grand jury were required to fill out an application that asked them to identify their gender and their “race or ethnic derivation.” Applicants were then interviewed and rated by a panel of trial judges. After reviewing the applications, which revealed which applicants were Hispanic, and the ratings of the interview panel, each trial judge had complete discretion to nominate two persons who met the minimum statutory requirements. Using this system, had they been so inclined, any or all of the judges could have purposefully discriminated against Hispanics or members of other racial or ethnic groups.
Nevertheless, despite the potential for abuse inherent in the system, I agree with the majority that the prosecution adequately proved that the underrepresentation of Hispanics on the grand jury did not result from any purposeful discrimination. Particularly persuasive is the evidence that (1) substantial efforts were made to persuade members of the Hispanic community to apply for grand jury service; (2) from 1986 to 1991, the percentage of Hispanic applicants was identical to the percentage of Hispanics nominated for the grand jury, showing that the nomination process did not reduce Hispanic representation; and (3) during the same period, trial judges nominated 73 percent of the interviewed applicants who identified themselves as “Hispanic,” compared to only 46 percent of interviewed applicants who identified *768 themselves as “Caucasian.” Thus, I agree with the majority that the trial court did not err in denying defendant’s motion to quash the indictment.
On this basis, I concur in affirming the judgment.
Appellant’s petition for a rehearing was denied October 12, 2011.